**STATE OF NEW YORK, Plaintiff,**

v.

**The TOWN OF OYSTER BAY et alia, Defendants.**

**No. CV–83–5357.**

United States District Court,
E.D. New York.

Sept. 16, 1988.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This action was commenced by the State of New York on December 8, 1983, under the Comprehensive Environmental Response, Compensation & Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., as amended by the Superfunds Amendments & Reauthorization Act, Pub.L. 99–499, 100 Stat. 1613, and several state statutory and common law causes of action. All causes of action demand the remediation of environmental problems at the Old Bethpage landfill located in the Town of Oyster Bay, New York. The State originally sued the Town of Oyster Bay, as owner and operator of the landfill facility, and several corporate defendants. The defendants then brought third-party actions against approximately 160 other parties. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 9613.

The matter is before the Court for an order approving a consent decree agreed to by the plaintiff, all defendants, and all third-party defendants listed in Appendices E–II and E–III of the decree. The decree requires the Town to undertake the remediation of the landfill, for the State and the settling parties to perform the duties and obligations set forth in the decree, and for whatever additional relief the Court deems proper.

Although the affidavit in support of the motion, sworn to by Robert L. Osar, Assistant Attorney General, states that it is supported by all the settling parties and that no opposition has been voiced, the Court received on affidavit in partial opposition to the decree from Jeffrey Levitt, an attorney representing eight third-party defendants who have signed the consent decree.[1] The essence of this partial opposition is a request that the Court modify the decree to provide that these objecting parties not be responsible for contribution to a common defense fund provided for in the decree to pay for certain legal fees and expenses.

The following facts are taken from the decree itself and the affidavit in support of the motion, except where noted.

As a result of this litigation, the Town and State undertook an investigation of the environmental problems associated with the landfill, and a remedial feasibility study was done. During 1986, the State and Town provided data and information developed by the remedial investigation to the parties. A case management order was approved by the Court in January 1987 providing a schedule for the conduct of the litigation. On March 9, 1987, the parties agreed to adjourn the case management order and pursue settlement. In July 1987, a remedial feasibility study recommended a specific remediation program. The study was delivered to the parties and the public. The remedy that was subsequently selected is set forth in a Record of Decision, which was approved by the State Department of Environmental Conservation and the Federal Environmental Protection Agency in March 1988. The Remedial Action Plan is Appendix A to the consent decree.

---

1. The affidavit in opposition states there is an error in the consent decree to the effect that one party, Ultra Graphics, Inc., was placed in Group I of the third-party defendants rather than Group II, where it belongs. There is apparently no dispute about this, and the decree has been modified accordingly.

The settling parties agreed to the final consent decree in May 1988, and execution of the decree was completed in July 1988. A letter from Robert Osar, dated August 8, 1988, states that the defendant Town of Oyster Bay will continue its action against the remaining non-settling third parties. The identities of those non-settling parties were submitted to the Court in a letter dated August 22 by counsel for the Town.

A public comment period of 30 days ran from June 24 to July 25, 1988. Although the affidavit in support states that no comments were received, a subsequent letter from the State Attorney General's office indicated that one public comment was received, and a response was sent to the commentator. The State, by its letter, asserts that it does not deem the comment to be a formal objection to entry of the consent decree, though it deemed it appropriate to notify the Court of the letter's existence.

The affidavit in support of the motion states that the motion is supported by all settling parties and entry of the decree is in the public interest.

### DISCUSSION

█ While the construction of a consent decree is essentially a matter of contract law, the decree itself must be treated as a judicial act. *See United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). In *United States v. ITT Continental Bakery Co.*, 420 U.S. 223, 236 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1974), the Supreme Court stated:

"Consent decrees and orders have attributes both of contracts and of judicial decrees or, in this case, administrative orders. While they are arrived at by negotiation between the parties and often admit no violation of law, they are motivated by threatened or pending litigation and must be approved by the court or administrative agency."

The standard of review for approval of a consent decree has been described as follows:

"It is well settled that the function of the reviewing court is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy."

*United States v. Hooker Chemicals & Plastics Corp.*, 540 F.Supp. 1067 (W.D.N.Y. 1982). In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974), the Court of Appeals for the Second Circuit stated:

"When a District Court exercises its authority in approving a settlement offer, it must give comprehensive consideration to all relevant factors, and yet the settlement hearing must not be turned into a trial or a rehearsal of the trial. The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."

*Id.*, at 462 (citation omitted).

█ Two cases similar to the case before the Court approving settlements requiring the cleanup of complicated environmental problems adopted three criteria for consideration by a court in its decision to approve a proposed settlement agreement. These criteria are legality, fairness, and reasonableness. *United States v. Seymour Recycling Corp.*, 554 F.Supp. 1334, 1337 (S.D. Ind.1982); *United States v. Conservation Chemical Co.*, 628 F.Supp. 391–400–02 (W.D.Mo.1985). The underlying purpose of the Court in making these inquiries is to determine whether the decree adequately protects the public interest, *Seymour, supra*, at 1337, and to determine the settlement's overall fairness to beneficiaries. *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117 (D.C.Cir.1983).

█ The consent decree proposed here fulfills the criteria described above for judicial approval. A review of the terms of the decree satisfies the Court that it is lawful, fair, adequate, and in the public interest. The plan of the decree requires the expeditious cleanup of the environmental problems at the Old Bethpage landfill and provides a satisfactory solution to the present litigation. After conducting technical studies, reviewing feasible alternatives, and re-

ceiving comment from the public, the Town recommended and the State and Federal Environment Protection Agency selected a relatively speedy and comprehensive cleanup program. Under the terms of the decree, the Town will monitor the implementation and operation of the Remedial Action Plan, providing the State with detailed quarterly and annual reports. The decree advances the purposes of relevant statutes, particularly CERCLA, which are concerned with remediation of hazardous waste sites. All formal documents required by CERCLA have been completed by the State and Town. The burden of the costs associated with the program is to be fairly distributed among the parties. The cost of the cleanup is estimated to be approximately $7,000,-000. All responsible parties will contribute funds toward the cleanup activities. The corporate defendants will bear the bulk of the costs for the ground water remediation. Settling third-party defendants will contribute a less substantial but significant share of these costs. Since the decree conditions the Town's issuing of releases, indemnities, and covenants not to sue upon the defendants' payment of their allocated contributions, the Town will collect the money immediately, enabling it to earn interest on the money until it is expended. This interest will offset the Town's portion of the remedial costs.

■ The remediation program itself has not been challenged. The sole statement of opposition to the allocation of costs under the decree was submitted through a letter during the period for public comment. This opposition expressed the view that local homeowners should not be required to pay for the remediation, as household garbage attributable to them did not create the ground water problem. However, the Old Bethpage landfill contains industrial, commercial and as household waste, all of which contributed to the environmental problems at the site. If no suit had been brought, the Town and the local homeowners could have been responsible for almost all of the costs of any required remediation under New York State law. As stated, however, the corporate and third-party defendants will contribute the bulk of the estimated costs of ground wa-

ter remediation. The recently enacted Environmental Quality Bond Act provides state taxpayer money to aid in the cleanup of hazardous waste sites. Pursuant to this Act, the Town has applied for the State to pay 75% of the cleanup costs not recovered by the municipality from insurance and other responsible parties. The Town will assume any costs beyond those amounts. The provisions governing liability under the applicable laws have enabled the Town to recoup most of the eventual costs of the required environmental cleanup of the landfill. Still, local taxpayers are left to bear some responsibility. Under the circumstances of the situation, the portion of the total falling to the taxpayers is reasonable and necessary. Thus, the overall allocation of the costs of the environmental cleanup appears well apportioned and fair. Moreover, entry of the decree would serve the public interest by implementing a well designed, comprehens e response to the environmental problems posed by the landfill.

Eight third-party defendants, all of whom signed and consented to the final consent decree, opposed the decree in part. Specifically, these third-party defendants oppose the provision found in Article XII of the decree requiring all settling third-party defendants to pay to the Treasurer of Old Bethpage Landfill Common Defense Fund, "all fund allocations attributed to such Settling Third–Party Defendant by a date certain, no later than entry of this Decree, to be noticed in writing by the Management Committee."

Prior to the time when the signatures to the decree were executed by the settling parties, the Management Committee had determined that third-party defendant contributions to the common defense fees would be allocated on a *per capita* basis. The Management Committee was empowered to make this decision pursuant to the provisions of the common defense group agreement. The dollar amount of the *per capita* contribution was fixed by vote at a meeting during the period of settlement negotiations which counsel for the parties in partial opposition to the decree attended. The settling third-party defendants were further notified by letter that contribution to the fund was a prerequisite to partic-

ipation in the settlement and indeed to approval of the final consent decree. Thus, it was clearly set forth at the time the opposing third-party defendants signed the decree that such signature and participation would commit them to payment of a *per capita* allocation to the common defense fund.

One of the eight opposing third-party defendants had signed an initial agreement to participate in the common defense group fund. Although there was a provision in the defense group agreement drafted in April 1986 permitting withdrawal from the agreement if such request was submitted in writing, the one party opposing the final decree which had previously consented to participation in the group never sought to withdraw from the agreement. Nonetheless, this third-party defendant seeks to avoid contribution to the fund on the ground that up until it signed the decree it had not utilized the Management or Settlement Committees' settlement efforts but rather, had pursued settlement negotiations with the Town on its own. The other seven third-party defendants, who did not execute the original agreement, also contend that they did not benefit from the work of the common defense group.

These third-party defendants, however, all had the option, when faced with participation in the final consent decree, not to sign it. Having signed the decree they now enjoy the fruits of the Management and Settlement Committees' labor. Plainly, all signatories are beneficiaries of the work the committees performed in arriving at a document acceptable to all parties. The settling third-party defendants should not be unjustly enriched at the expense of the remaining third-party defendants. With respect to compensation of lead or liaison counsel in multi-party litigation, The Manual for Complex Litigation, Second § 20.223 (1985) states:

"In fairness, expenses incurred and fees earned by special counsel and committees should not be borne solely by their own clients, but rather should be shared equitably by all benefiting from their services and relieved from similar obligations. If possible, the terms and procedures for payment should be established by agreement among counsel. If a consensus cannot be reached, however, the judge has the power and duty to order fair reimbursement and compensation."

Equity requires that all the third-party defendants who signed the decree should be subject to payment of their fair allocation to the common defense group fund. Since the fees and expenses involved are those for which each client would have had to pay separate counsel and are not large, *per capita* payment seems appropriate.

Having examined and resolved the issues raised in opposition to the decree, this Court approves the final consent decree as fair and reasonable subject only to judicial review of compensation sought by attorneys out of the common defense fund. Monies collected pursuant to Article XII, therefore, should not be disbursed but should be held in escrow until the issue of reasonableness of the legal fees and expenses is determined.